IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Gary Garcia, Jennifer Grodewald, Jordan Seymore, and Olivia Cureton, § § § § § | | |
| *Plaintiffs*, § | | |
| vs. § | Civil Action No. 4:18-cv-125 | |
| Ford Motor Company, § § § | | |
| *Defendant*. § | | |

## PLAINTIFFS' COMPLAINT

**To the Honorable United States Judge of Said Court:**

COME NOW, Gary Garcia, Jennifer Grodewald, Jordan Seymore, and Olivia Cureton (hereinafter referred to as "Plaintiffs"), and respectfully file this Complaint against Ford Motor Company (hereinafter referred to as "Defendant"), and in support hereof would state and show the following:

### I. Parties

1. Plaintiff, Gary Garcia, is a biological son of Renee Garcia, deceased. He resides in and is a citizen of Beaurfort, South Carolina.

2. Plaintiff, Jennifer Grodewald, is a biological daughter of Renee Garcia, deceased. She resides in and is a citizen of Seminole, Florida.

3. Plaintiff, Jordan Seymore, is a biological son of Renee Garcia, deceased. He resides in and is a citizen of College Station, Texas.

4. Plaintiff, Olivia Cureton, is a biological daughter of Renee Garcia, deceased. She resides in and is a citizen of Carthage, Texas.

5. Defendant, Ford Motor Company is a foreign corporation doing business in Texas, and service of process up on this Defendant may be had by serving its registered agent of service, CT Corporation at 1999 Bryan, Suite 900, Dallas, Texas 75201.

## II. Jurisdiction

6. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

7. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## III. Facts

8. On or about January 15, 2017, Renee Garcia was driving a 2007 Ford F150 (VIN#1FTRX12W97KD45472) traveling northbound on SH 47 in Brazos County, Texas.

9. The subject vehicle was designed by Ford Motor Company.

10. The subject vehicle was manufactured by Ford Motor Company.

11. The subject vehicle was also assembled and tested by Ford Motor Company.

12. For unknown reasons, control of the subject vehicle was lost, causing the vehicle to strike and skid along the guard rail before traveling off of the overpass and landing on its right side onto SH 21.

13. At the time of the accident, Renee Garcia was properly seated and properly wearing the available 3-point seat belt.

14. However, despite being properly seated and properly wearing the available 3-point seat belt, Renee Garcia sustained fatal injuries when the vehicle failed to protect her because it violated several crashworthiness principles.

15. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

   1. Maintain survival space;
   2. Provide proper restraint throughout the entire accident;
   3. Prevent ejection;
   4. Distribute and channel energy; and
   5. Prevent post-crash fires.

16. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

17. The National Transportation Safety Board (NTSB) has also stated that, "Vehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—

includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

18. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

### IV. Cause(s) of Action as to Defendant Ford Motor Company

19. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving its vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

20. The injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

21. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

22. As detailed herein, the vehicle contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

23. Defendant either knew or should have known of at least one safer alternative design which would have prevented the fatal injuries to Renee Garcia.

24. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and

defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

a. The vehicle failed to provide proper restraint;
b. The vehicle failed to distribute and channel crash forces properly;
c. The vehicle failed to prevent ejection from the nominal seating position;
d. The vehicle failed to keep the seat upright;
e. The vehicle failed to have its seat yield and deflect in a controlled manner;
f. The vehicle failed to have a seat capable of withstanding 30,000 in pounds of moment or more;
g. The vehicle failed to have a seat capable of deflecting or yielding to only 45 degrees;
h. The vehicle failed to utilize a cable retention seat;
i. The vehicle failed to utilize a seat that contained UHSS, boron, ferrite, martensite, AHSS, complex phase or dual phase steel to ensure adequate retention;
j. The vehicle violated principles of crashworthiness;
k. The vehicle failed to provide any warnings, instructions or advisories regarding seat collapse;
l. The vehicle was not properly tested;
m. The vehicle was not subjected to rigorous engineering analysis;
n. The vehicle failed to undergo extensive FEM or equivalent type analysis;
o. Arguments that seats cannot be too strong are belied by convertibles, trucks with non-extended cabs, vehicle like taxis and police cars with protective shields behind the front seats, and rear seats with fixed rear bench type seats;
p. The vehicle failed to provide proper protection during a rollover;
q. The vehicle permitted belt rollout;
r. The vehicle's ABTS retractor failed to provide nominal restraint; and/or
s. The vehicle's ABTS retractor separated from the seat.

25. Defendant was further negligent in the design, manufacture, assembly, marketing, and/or testing of the vehicle in question.

26. Most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

27. Accordingly, since paramount means "superior to all others", all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles.

28. However, Defendant failed to conduct proper testing and engineering analysis during the design, development, and/or testing of the vehicle.

29. In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

30. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

31. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

32. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

33. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

34. Based upon information and/or belief, the subject vehicle was not subjected to rigorous engineering analysis.

35. Based upon information and/or belief, the subject vehicle was not properly tested.

36. Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

37. When Defendant designed the subject vehicle, it did not reinvent the wheel. Defendant used (or should have used) an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicles. This knowledge would have been (or should have been) utilized in different aspects of the designs of the vehicle to make the vehicle safer in foreseeable accidents.

38. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant is also in possession of what, if any, engineering analysis it performed.

39. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

40. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when it knew it, and about what was utilized or not utilized as well as the reasons why.

41. The foregoing acts and/or omissions, defects, and/or negligence of Defendant were the producing, direct, proximate, and/or legal cause of Renee Garcia's fatal injuries, and Plaintiffs' damages.

## V. Damages to Plaintiffs

42. As a result of the acts and/or omissions of the Defendant, Plaintiffs have become obligated to pay reasonable and necessary funeral and burial expenses as a result of the fatal injuries to Renee Garcia.

43. As a result of the acts and/or omissions of the Defendant, Plaintiffs have experienced pain and suffering, extreme emotional distress, mental anguish, and loss of consortium as a result of the fatal injuries of Renee Garcia.

44. The above and foregoing acts and/or omissions of the Defendant, resulting in the fatal injuries to Renee Garcia, have caused actual damages to Plaintiffs in an amount within the minimum jurisdictional limits of this Court.

## IX. Prayer

45. For the reasons presented herein, Plaintiffs pray that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiffs recover judgment against Defendant for:

   a. actual damages;
   b. economic and non-economic damages;
   c. prejudgment and post-judgment interest beginning January 15, 2017;
   d. costs of suit; and
   e. all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**


  /s E. Todd Tracy
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Stewart D. Matthews
State Bar No. 24039042
SMatthews@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiffs**